**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**
ex rel. **GREGORY CHABOT,**
**GREGORY CHABOT, qui tam plaintiff,**

           **Plaintiffs,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-1536-Orl-28KRS**

**D & G DISCOUNT HOMES, LLC,**

           **Defendant.**

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** **MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. No. 21)**
>
> **FILED:** June 30, 2008
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

**I. INTRODUCTION.**

On October 2, 2006, Gregory Chabot, proceeding as *qui tam* plaintiff on behalf of the United States, filed a verified complaint against Defendant D&G Discount Homes, LLC ("D&G") alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. (2006). Doc. 1. Plaintiff served the complaint on D&G on November 30, 2007. Doc. 6. On February 14, 2008, D&G filed an answer *pro se*, which was stricken on March 20, 2008 because a corporation cannot appear and be

heard in this Court except through counsel of record. Doc. 12. This Court's order striking D&G's answer gave D&G until April 4, 2008 to retain counsel to file an answer on its behalf. *Id.*

D&G failed to retain counsel to file an answer on its behalf. Pursuant to Chabot's motion, Doc. No. 13, this Court directed the Clerk of Court to enter a default against D&G. Doc. No. 14. The Clerk of Court entered default against D&G on April 18, 2008. Doc. No. 15. On June 30, 2008, Chabot filed the instant motion seeking entry of a final default judgment. Doc. No. 21.

## II. APPLICABLE LAW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)(citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. *Id.*

**III.    ALLEGATIONS OF THE COMPLAINT.**

In 2004, many residences in various counties in Florida suffered significant damages due to hurricanes Charley, Frances, Ivan and Jeanne. Doc. 1 ¶ 7. The counties in which these damages occurred were officially declared disaster areas by the federal government. *Id.* In order to provide relief to citizens who had lost their homes in the declared disaster areas, the Federal Emergency Management Agency ("FEMA") initiated a temporary housing program to provide shelter to those displaced victims through the installation of manufactured/mobile homes. *Id.* ¶ 8.

Through a collaborative effort, FEMA and the State of Florida's Bureau of Mobile Home and Recreational Vehicle Construction ("Bureau of Mobile Homes") were to provide request for quotation packages ("RFQs") to contractors so that they could bid for the contracts to haul and install the manufactured/mobile homes. *Id.* ¶ 9. Under the RFQs, a contractor could only tender for acceptance items that conformed to the requirements of the contract. According to Chabot, the RFQs also required the bidder to comply with all Federal, State and Local regulations. Specifically, Section 1.5 of the RFQs required that all companies or individuals that were contracting with the government to be licensed or to employ licensed personnel, and that such licenses conform to state or local licensing requirements for installing manufactured/mobile homes. Section 1.5 also required the contractor to obtain all proper licenses and permits. *Id.* ¶ 10.

Regulations promulgated by the Bureau of Mobile Homes provide as follows: "no person may perform manufactured/mobile home installation unless licensed by the department pursuant to section 320.8249, [Fla. Stat.], regardless of whether that person holds a local installer's license or any other local state license." The regulations also provide that in order to obtain an installation contractors license, a person must attend a state training class, pass a contractor exam and have a performance

bond and general liability policy. If the contractor employs more than three employees, it must also carry workers' compensation insurance. *Id.* ¶ 11. The license is not transferable. *Id.* Section 320.8249(7)(a), (b), and (f), Florida Statutes, prohibits a person from falsely holding out a business organization as a licensed mobile home installer, among other things, without being duly licensed. *Id.* ¶ 12.

D&G is a Florida corporation whose principal place of business is Jacksonville, Florida. It is not licensed to install manufactured/mobile homes in the State of Florida. *Id.* ¶ 4. Chabot is a licensed manufactured/mobile home installer in Florida. *Id.* ¶ 14.

On about September 20, 2004, Gary Garrand from D&G contacted Chabot and asked to purchase installation certification decals so that he could have an unlicensed crew from out-of-state install temporary housing under a contract with FEMA. *Id.* ¶ 15. Chabot told Garrand that it was illegal to sell decals and that if Garrand was not a licensed contractor, he would be ineligible for a FEMA contract. *Id.*

On about October 4, 2004, Chabot received an RFQ package that contained an e-mail regarding an earlier pre-bid conference. Chabot discovered that there were unlicensed persons or companies listed in the e-mail. *Id.* ¶ 18. Chabot complained to the Bureau of Mobile Homes about the solicitation of unlicensed companies. *Id.* ¶ 22. Chabot also traveled to various locations where manufactured homes were being installed in the declared disaster areas. He discovered that the majority of the recipients of the contracts awarded from the various RFQs were unlicensed. *Id.* ¶ 24.

In the complaint, Chabot avers that "[b]ecause of the preclusion of the state's licensed installers from directly contracting, . . . Defendant D&G, through unlicensed contracting, [was] able to charge the federal government almost three times the normal rate charged by the local licensed

contractors, such as CHABOT, for installation of manufactured housing." *Id.* ¶ 25. He further avers that "Defendant D&G, in submitting claims pursuant to the RFQ's for the installation of manufactured homes, has held itself out as a licensed mobile home installer, impersonated a licensed mobile home installer, and engaged in the business by acting in the capacity of a licensed mobile home installer without being duty licensed in violation of Florida Statutes 320.8249(7)(a),(b), (f) and Chapter 15 C-1 of the Florida Bureau of Mobile Home regulations." *Id.* ¶ 28. Finally, Chabot avers that "[b]ased on the RFQ for [specific disaster relief declarations], D&G, with knowledge of their falsity or the reckless disregard for the truth of their falsity, did make, use, or cause to be used, false certifications claiming that it was duly licensed to install manufactured housing and therefore eligible to present claims to the FEMA disaster relief office in Orlando for such installation on 11/04/2004 for $1,000,000 and on 04/05/2005 for $1,000,000 for a total of $2,000,000 received . . . ." *Id.* ¶ 30.

**IV. ANALYSIS.**

    *A.    Liability.*

The FCA provides as follows:

Any person who

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; [or]

(2) knowingly makes, uses, or causes to be made or used, a false record of statement to get a false or fraudulent claim paid or approved by the Government . . .

is liable to the United States Government for a civil penalty of not less than $5000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

31 U.S.C. § 3729(a)(1), (2). The FCA defines a claim as follows:

>any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the Untied States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c). The United States Court of Appeals for the Eleventh Circuit requires that allegations of violation of the FCA be pleaded with specificity, as required by Fed. R. Civ. P. 9(b). *United States ex re. Clausen v. Laboratory Corp.*, 290 F.3d 1301, 1311 (11th Cir. 2002)("*Clausen*").

Chabot argues that D&G's false certification of eligibility to enter into a contract with the government to install manufactured housing is a false claim in violation of the FCA. Doc. No. 21 at 2. He relies upon *United States ex rel. Mervyn A. Schwedt v. Planning Research Corporation*, 59 F.3d 196 (D.C. Cir. 1995)(*Schwedt*), for the proposition that an FCA violation may be predicated on something other than an invoice or request for payment. In *Schwedt*, the *qui tam* plaintiff alleged that the defendant submitted false progress reports about its performance under a contract with an agency of the United States thereby inducing the United States to pay for various components of the project it would not otherwise have accepted. *Id.* at 197. The court held that the progress reports were sufficiently related to the goal of receiving payment that Schwedt's complaint stated a claim under the FCA. *Id.* at 199.

Assuming for purposes of this analysis that a response to an RFQ could be "claim" for purposes of the FCA, Chabot fails to allege facts sufficient to establish that any response D&G submitted was false or fraudulent. Chabot did not attach a copy of the RFQ to his complaint, but he attests that Section 1.5 of the RFQ "required that all companies or individuals that were contracting with the government be licensed **or employ licensed personnel** and that such licenses were also to conform to state or local licensing requirements for installing manufactured housing." Doc. 1 ¶ 10

(emphasis added).  Chabot also attests that "[t]he terms of Section 1.5 obligated the contractor to obtain all proper licenses and permits."  *Id.*   Chabot avers that D&G did not have a license to install manufactured/mobile homes.

Chabot does not expressly allege that D&G failed to employ licensed personnel to perform the installations.[1]  The closest Chabot comes in this regard is his attestation that "Defendant D&G, through unlicensed contracting, [was] able to charge the federal government almost three times the normal rate charged by the local licensed contractors, such as CHABOT, for installation of manufactured housing."  Doc. 1 ¶ 25.  Because the Eleventh Circuit requires complaints of violation of the FCA to be pleaded with specificity, this conclusory allegation of "unlicensed contracting" is insufficient, viewed in the context of the complaint as a whole, to allege both that D&G was not licensed to install manufactured/mobile homes and that D&G employed unlicensed individuals to perform the installations on its behalf.  Because the provisions of the RFQ, as set forth in the complaint, permit *either* that the applicant hold the proper license *or* that the applicant hire licensed personnel to perform the work, D&G's failure to have its own license is not, standing alone, a violation of the terms of the RFQ.  As such, the allegations of the verified complaint are insufficient to establish that D&G submitted false information in response to the RFQ.[2]

---

[1] On the contrary, Chabot includes documentation establishing that, at least in one of the eighteen installations for which he seeks penalties under the FCA, D&G appears to have employed a licensed subcontractor, Able Mobile Home of Gainesville, Florida, as Section 1.5 permitted. *See* Doc. No. 21-4 at 11.

[2] Chabot does not expressly allege that D&G submitted a response to an RFQ, does not quote the statements in D&G's response to the RFQ that were false or fraudulent, and does not expressly allege that FEMA awarded D&G a contract to install manufactured/mobile homes.  The *Clausen* court found that a complaint that failed "to allege with any specificity if – or when – any actual improper claims were submitted to the Government" pursuant to the RFQ, rendering the

In support of its contention that the allegations of the complaint are sufficient to establish liability, Chabot relies on decisions in other cases in which the Court denied a motion to dismiss similar claims for failure to state a claim.  *See United States ex rel. Chabot v. Nu-Way Concrete Co.*, No. 6:06-cv-1529-ORL-28KRS (M.D. Fla.); *United States ex rel. Chabot v. MLU Servs.*, No. 6:06-cv-1528-ORL-19UAM (M.D. Fla.).  These decisions are not persuasive in the present context because a complaint may survive a motion to dismiss and still be insufficient to establish liability under Fed. R. Civ. P. 55.  *See Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1358 (S.D. Ga. 2004).  Accordingly, I recommend the Court find that the complaint is insufficient to establish that D&G is liable for violation of the FCA.

*B.     Damages*.

Should the Court conclude that the allegations of the complaint are sufficient to establish liability, I will address the evidence regarding damages.  As noted above, the FCA provides for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the submission of the false claim.

Chabot asserts that the United States[3] should recover a $5,000 penalty for each of two false certifications of eligibility for award of contracts and for each of eighteen invoices submitted by D&G. He contends that the United States also suffered actual damages in the amount of $981,491.50 paid pursuant to the eighteen invoices for the installation of the mobile homes by D&G, which

---

complaint insufficient to state a violation of the FCA.  *Clausen*, 290 F.3d at 1312.

[3] Chabot incorrectly argues that he is entitled to receive the statutory penalty.  In an FCA case, the penalties and damages are paid to the United States.  The relator is then allowed to seek a share of that recovery.  31 U.S.C. § 3730(d)(2).

amount should be trebled under § 3729(a), citing *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995), *United States ex rel. Hess*, 317 U.S. 537, 543 (1943), and *United States v. Miller*, 645 F.2d 473, 475-76 (5th Cir. 1981).

The only evidence Chabot submitted in support of these penalties and damages are documents produced by FEMA in response to a subpoena. Doc. No. 21-2 through 21-5. The documents do not appear to include D&G's allegedly false certifications in response to the RFQs. Chabot also submitted a number of invoices submitted by D&G to FEMA, but without the corresponding RFQs and responses thereto, the evidence is insufficient to establish that these invoices relate to contracts awarded pursuant to D&G's false certification of eligibility for FEMA contracts. Accordingly, if the Court determines that D&G is liable based on the allegations of the complaint, the evidence is insufficient to establish an award of that amount in damages and penalties to the United States.

## IV. RECOMMENDATION.

For the foregoing reasons, I respectfully recommend Plaintiff's Motion for Entry of Default Judgment be **DENIED**. If the Court adopts this Recommendation, I further respectfully recommend the Court enter an Order to Show Cause why the complaint should not be dismissed without prejudice

because the well-pleaded facts therein are insufficient to establish liability. *Fid. & Deposit Co.*, 699 F. Supp. at 899.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 29, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE